UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:15-cr-00089-JAW |
| | ) | |
| JAMES J. SENIOR | ) | |

**SENTENCING ORDER**

The Court concludes that the Government has not met its burden to establish that the defendant was incarcerated for a 1999 Massachusetts assault conviction within the fifteen-year lookback period provided in United States Sentencing Guideline § 4A1.2(e)(1). With the elimination of the defendant's 1999 conviction, he does not qualify as a career offender under United States Sentencing Guideline § 4B1.1(a).

**I.    BACKGROUND**

On May 13, 2015, a federal grand jury indicted James J. Senior in a single-count indictment, charging him with robbing a pharmacy by taking controlled substances on March 31, 2015, a violation of 18 U.S.C. § 1951, known as the Hobbs Act. *Indictment* (ECF No. 1). Mr. Senior entered a guilty plea on June 11, 2015. *Min. Entry* (ECF No. 18). The Court held a presentence conference on October 29, 2015 and the parties agreed to file sentencing memoranda on the legal impact of Mr. Senior's criminal record and the applicability of the 2015 United States Supreme Court case of *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson II*).[1]  *Min.*

---

[1]   The Court refers to *Johnson v. United States*, 559 U.S. 133 (2010) as *Johnson I* and to *Johnson v. United States*, 135 S. Ct. 2551 (2015) as *Johnson II.*

*Entry* (ECF No. 21). The Government filed its sentencing memorandum on November 30, 2015. *Gov't's Sentencing Mem. Addressing the Appl. of U.S.S.G. §§ 4A1.2 & 4B1.1* (ECF No. 22) (*Gov't's Mem.*). Mr. Senior filed his response on January 8, 2016. *Mr. Senior's Mem. in Aid of Sentencing* (ECF No. 23) (*Def.'s Opp'n*). The Government filed its reply on January 13, 2016. *Gov't's Reply to the Def.'s Sentencing Mem.* (ECF No. 24) (*Gov't's Reply*).

## II.  THE PRESENTENCE INVESTIGATION REPORT

In Part B of the Presentence Investigation Report (PSR), not counting separate counts, the Probation Office (PO) listed seventeen arrests that resulted in convictions for Mr. Senior, beginning December 16, 1992, when Mr. Senior was arrested and later convicted of knowingly receiving stolen property, through June 7, 2009, when he was arrested and later convicted of operating under the influence. *Presentence Report* ¶¶ 27-43 (*PSR*). The PO calculated Mr. Senior's total criminal history score at 16, which resulted in a criminal history category of VI. *Id.* ¶ 44.

The PO also concluded that Mr. Senior qualified as a career offender under U.S.S.G. § 4B1.1(a) on the grounds that he had been convicted of a crime of violence in the commonwealth of Massachusetts in 1999, Assault by Means of a Dangerous Weapon (1999 ADW conviction), and a qualifying controlled substance offense in the state of Maine in 2004, Unlawful Trafficking in Scheduled Drugs, Heroin, Class B. *Id.* As a career offender, his criminal history category was deemed category VI. *Id.*; *see* U.S.S.G. § 4B1.1(b). In addition, the PO assessed three criminal history points arising from an April 20, 1994 conviction in the commonwealth of Massachusetts for

Intimidation of a Witness. *PSR* ¶ 31. Mr. Senior objected to each of these conclusions. *PSR* at Addendum.

## III. THE SIGNIFICANCE OF THE ISSUES

In the PSR, the PO, having determined that Mr. Senior was a career offender and in accordance with U.S.S.G. § 4B1.1(b), fixed his criminal history as category VI and his adjusted offense level as 32. *PSR* ¶ 17. The PO determined that Mr. Senior was entitled to the three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), resulting in a total offense level of 29, a criminal history category of VI, and a guideline sentence range of 151 to 188 months. *PSR* ¶¶ 20, 44, 75. If Mr. Senior is not a career offender, his total offense level would drop to 18, his criminal history category would remain VI, and his guideline sentence range would be 57 to 71 months. *See Def.'s Opp'n* at 1; *Gov't's Reply* at 2.

## IV. THE PARTIES' POSITIONS[2]

### A. The Government's Memorandum

#### 1. *Johnson*

The Government concedes that *Johnson II* applies to the guidelines and that it eliminates the so-called residual clause under U.S.S.G. § 4B1.2(a)(2). *Gov't's Mem.* at 4-5. But it argues that Mr. Senior is subject to career criminal status under the so-called "force clause" of U.S.S.G. § 4B1.2(a)(1). *Id.* at 5-9.

#### 2. The Age of the Convictions

---

[2] The parties also raised questions about whether the 1999 ADW conviction should be deemed a career offender predicate offense, but the Court does not reach those issues in light of its determination that the 1999 ADW conviction is not countable under the Guidelines.

The Government contends that both the 1994 conviction for intimidation of a witness and the 1999 ADW conviction occurred within fifteen years of the March 31, 2015 pharmacy robbery and therefore are properly counted under U.S.S.G. § 4A1.2(e)(1). *Id.* at 9-14. The Government observes that the applicable time period is "the date of the last release from incarceration." *Id.* at 10-11 (citing U.S.S.G. § 4A1.2(e)). Reviewing the Massachusetts court records, the Government says that Mr. Senior was released from incarceration on a probation violation associated with the intimidation of witness conviction and on a custodial sentence for the ADW conviction on November 15, 2000, within the fifteen-year period. *Id.* at 11.

### B. James J. Senior's Opposition

Mr. Senior objects to the use of the 1999 ADW conviction both to calculate his criminal history score and as a predicate for career offender status. *Def.'s Opp'n* at 1-2. Mr. Senior acknowledges that he was convicted of assault in Massachusetts on February 3, 1999. *Id.* at 3. He says he was sentenced to "a term not exceeding two years or less than one" on February 10, 1999. *Id.* He asserts that on February 10, 1999, he was also found to have violated probation with respect to a 1994 intimidation of a witness conviction and that he was sentenced for the probation violation to the "balance of the original sentence imposed on April 20, 1994." *Id.* He points out that the Massachusetts court documents state that the "Dep't of Corrections to determine the time to be served" and that the sentence was "to be served concurrently with the sentence imposed" on the assault. *Id.* (citing *id.* Attach. 2, Ex. B).

4

Mr. Senior asserts that the PSR states that before being sentenced on February 10, 1999, he had served eight months of his three to five year sentence on the intimidation of a witness conviction. *Id.* (citing *PSR* ¶ 31). Accordingly, on February 10, 1999, when the Massachusetts court imposed a sentence of the "balance of the original sentence imposed on April 20, 1994" for the probation violation, Mr. Senior was "effectively sentenced . . . to an indeterminate period of somewhere between 2 years, 4 months and 4 years, 4 months." *Id.* at 3-4.

As Mr. Senior sees it, "it is impossible to determine whether the assault conviction **resulted in** Mr. Senior being incarcerated during the look back window." *Id.* at 4 (emphasis in original). Focusing on the Massachusetts Department of Corrections calculations for release dates, Mr. Senior argues that "these adjusted, combined potential release dates, all of which exceed the two year maximum sentence imposed on the assault conviction, can only have been arrived at and therefore be the 'result' of the greater 3 to 5 year sentence imposed on the probation violation conviction." *Id.* at 5 (emphasis in original). He concludes that "the actual release date, i.e. November 15, 2000, could only have been arrived at and therefore be the 'result' of the impact (i.e. setting the maximum sentence date) of the longer of the two concurrent sentences, i.e. the sentence imposed on the probation violation conviction and not the assault conviction." *Id.* (emphasis in original).

Mr. Senior acknowledges that this argument alone would not carry the day, because the Court would have to conclude that "but for" his probation violation conviction, he would have been eligible for release before April 1, 2000, fifteen years

5

prior to the March 31, 2015 pharmacy robbery. *Id.* He claims, however, that Government Exhibit D—the Department of Correction documents—establishes that his "minimum release date" for the assault charge was February 6, 2000, and therefore he could have been eligible for release on the 1999 ADW conviction "at any period between February 6, 2000 and March 31, 2000 (all dates outside the look back period)." *Id.* Without more information, he maintains that the Government failed to sustain its burden to establish that he was incarcerated on the 1999 ADW conviction within the applicable fifteen-year period. *Id.* at 5-6.

### C. The Government's Reply

In its reply, the Government addresses Mr. Senior's argument that his 1999 ADW conviction did not result in his being imprisoned during the fifteen-year period that U.S.S.G. § 4A1.2(e) requires. *Gov't's Reply* at 4. The Government observes that the actual release date for the assault conviction for which he was sentenced on February 10, 1999 was November 15, 2000. *Id.* The Government goes on to say that Mr. Senior has argued that he "would have been released earlier had it not been for the probation violation sentence that was also imposed on February 10, 1999." *Id.* The Government notes that it has "already addressed" this argument. *Id.*

## V. DISCUSSION

Section 4A1.2(e)(1) of the United States Sentencing Guidelines provides:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

U.S.S.G. § 4A1.2(e)(1). This lookback period applies to the computation of the criminal history score, as well as to the counting of convictions under the career offender provision of the Guidelines. *See id.* §§ 4A1.2, 4B1.2 cmt. n.3. Here, Mr. Senior committed the pharmacy robbery on March 31, 2015. *Indictment* (ECF No. 1); *Prosecution Version* at 1-2 (ECF No. 17). The fifteen-year lookback period, therefore, captures offenses for which a sentence was imposed on Mr. Senior on or after April 1, 2000, and offenses which resulted in Mr. Senior being incarcerated on or after April 1, 2000.

The parties focused on a single prior conviction: the 1999 Massachusetts ADW conviction. To determine whether a prior conviction should be counted under the Sentencing Guidelines, a court may review certified copies of prior convictions, as well as "docket reports, charging documents . . . and other comparable judicial records." *United States v. Murdock*, 699 F.3d 665, 672 (1st Cir. 2012). The Massachusetts court documents under docket number 9881CR00396 establish that on March 10, 1998, a Massachusetts grand jury indicted Mr. Senior on six counts arising out of an incident that occurred on February 19, 1998: (1) count one, armed assault in a dwelling, M.G.L., ch. 265, § 18A, (2) count two, home invasion, M.G.L., ch. 265, § 18C, (3) count three, armed burglary, M.G.L., ch. 266, § 14, (4) count four, assault with a dangerous weapon, M.G.L., ch. 265, § 15B(b), (5) count five, destruction of property over $250, M.G.L., ch. 266, § 127, and (6) count six, threat to commit crime, M.G.L., ch. 275, §§ 2, 4. *Gov't's Mem.* Attach. 4-9, Gov't Ex. B(1)-(6). On February 3, 1999, the Middlesex County Superior Court accepted Mr. Senior's guilty

7

pleas to counts 4, 5, and 6, dismissed counts 1, 2, and 3, and continued the matter for sentencing. *Id.* Attach. 3, Gov't Ex. B at 4-5. Justice Martha B. Sosman of the Middlesex County Superior Court sentenced Mr. Senior on February 10, 1999 as follows:

> Sentence imposed. Offense004: MCI Cedar Junction for a term not exceeding two years or less than one year. Offenses 005, 006; On File (Martha B Sosman, Justice).

*Id.* at 5. Assuming Mr. Senior started his period of incarceration on February 7, 1999, he would have ended his incarceration for count 4, the assault offense, somewhere between February 6, 2000, just before the April 1, 2000 lookback date, and February 6, 2001, within the fifteen-year lookback period.[3] The Massachusetts court documents also establish that MCI Cedar Junction discharged Mr. Senior from further imprisonment on November 15, 2000. *Id.* Attach. 12, *Cert. of Discharge* at 1. As November 15, 2000 is within the fifteen-year lookback period, it would appear on its face that Mr. Senior was incarcerated within the fifteen-year lookback period under § 4A1.2(e)(1) for the 1999 ADW conviction.

However, Mr. Senior points out that on February 10, 1999, he was also sentenced for a probation violation arising out of a prior criminal offense: an intimidation of a witness conviction. On June 24, 1993, a Massachusetts grand jury indicted Mr. Senior for, among other things, intimidation of a witness, an alleged

---

[3] The documents establish that Mr. Senior went into custody on February 7, 1999 for the February 19, 1998 offense and that he was entitled to three days of credit as of February 10, 1999, the date of sentencing. *See Gov't's Mem.* Attach. 11, *Gov't Ex. D* at 9 (Jail Credit: 3) (*Gov't Ex. D*); *id.* at 3 ("The defendant having spent Three (3) days in confinement prior to such sentence awaiting and during trial").

8

violation of M.G.L., ch. 268, § 13B. *Id.* Attach. 10, *Gov't Ex. C* at 4, 8 (*Gov't Ex. C*). On April 20, 1994, Mr. Senior pleaded guilty to this charge and on the same day, he was sentenced to a term of incarceration at the Massachusetts Correctional Institution, Cedar Junction, for a term not exceeding five years or less than three years. *Id.* at 4. The docket states that Mr. Senior was required to serve eight months and the balance of the sentence was suspended for two years. *Id.* at 4-5.

The next relevant entry is February 3, 1999 when the court found that Mr. Senior had violated a condition of probation for the witness intimidation incident. *Id.* at 6. On February 10, 1999, Justice Sosman of the Middlesex County Superior Court imposed the following sentence on the probation violation:

> Deft having been found in violation of probation on Feb. 3, 1999 the court orders Deft to serve the balance of three to five MCI Cedar Junction originally imposed on April 20, 1994. To run concurrent with sentence imposed on 98-396-004.

*Id.* Crediting Mr. Senior with the eight months he had previously served on this offense, on February 10, 1999, he faced a period of incarceration on the probation violation of between two years and four months and four years and four months. *See Def.'s Opp'n* at 3-4.

The question narrows to whether Mr. Senior was incarcerated from April 1, 2000 to November 15, 2000 for the probation violation on the 1994 intimidation of a witness conviction and subsequent probation violation, for the 1999 ADW conviction, or for a combination of the two. The Government supplied a Massachusetts document entitled "Inmate Sentence Listing" for Mr. Senior. *Gov't Ex. D* at 9-11. This document is a Massachusetts Department of Corrections (MDOC) document, which details the

9

MDOC's sentencing calculations for Mr. Senior's offenses. *Id.* It refers to the two relevant convictions: (1) assault and battery by dangerous weapon and (2) intimidation of a witness.[4]

The MDOC calculations address the following categories: (1) parole eligibility, (2) minimum sentence, (3) maximum sentence, and (4) good conduct date. *Id.* at 9-11. The MDOC lists the following dates for the 1999 ADW conviction: (1) parole eligibility—February 6, 2000, (2) minimum sentence—February 6, 2000, (3) maximum sentence—February 6, 2001, and (4) good conduct date—February 6, 2001. *Id.* at 9. It lists the following dates for the 1994 intimidation of a witness conviction: (1) parole eligibility—June 12, 1999, (2) minimum sentence—June 12, 2001, (3) maximum sentence—June 12, 2003, and (4) good conduct date—May 23, 2001. *Id.* Finally, the MDOC contains a combination table, which combines the original and adjusted dates as of September 30, 1999. *Id.* For the original dates, it lists: (1) parole eligibility—February 6, 2000, (2) minimum—June 12, 2001, (3) maximum—June 12, 2003, and (4) good conduct date—May 23, 2001. *Id.* For the adjusted dates, it lists: (1) parole eligibility—January 27, 2000, (2) minimum—June 2, 2001, (3) maximum—June 2, 2003, and (4) good conduct date—May 13, 2001. *Id.*

The record before the Court does not answer the critical factual question: whether Mr. Senior's incarceration during the fifteen-year lookback period was in part for the 1999 ADW conviction. As Mr. Senior's actual release date was not until

---

[4] This document also refers to a third series of convictions involving a Class D drug manufacture, possession and distribution. *Gov't Ex. D* at 9-10. But this conviction does not change the Court's analysis.

November 15, 2000, well within the lookback period and less than the maximum sentence for the assault of February 6, 2001, it is possible that he was incarcerated to November 15, 2000 in part for the 1999 ADW conviction. But it is equally possible that but for the 1994 conviction and probation violation, he would have been released before April 1, 2000 and he would not have been incarcerated for the 1999 ADW conviction within the fifteen-year lookback period.

Nor does Massachusetts law answer this question. The Government argues that under Massachusetts law, a concurrent sentence is one sentence and as a practical matter, Mr. Senior was only serving one sentence. *Gov't's Mem.* at 12. The Court disagrees. In *Rampino v. Superintendent, Old Colony Correctional Center*, 814 N.E.2d 1094 (Mass. 2004), the Supreme Judicial Court of Massachusetts addressed concurrent sentences. The case involved a defendant who—like Mr. Senior—had committed two Massachusetts criminal offenses, one before and another after July 1, 1994, and who received concurrent sentences. *Id.* at 1095. On July 1, 1994, Massachusetts enacted the Truth in Sentencing Act, which repealed statutory good time. *Id.* (citing St. 1993, c. 432, § 10). Thus, Mr. Rampino was eligible for good time for the pre-July 1, 1994 crime, but not for the post-July 1, 1994 crime. *Id.* Mr. Rampino argued that he should have been entitled to good conduct credit for both sentences since they ran concurrently. *Id.* In *Rampino*, the Massachusetts Supreme Judicial Court rejected Mr. Rampino's contention and held that "[a]lthough Rampino was given concurrent sentences, the sentences remain distinct." *Id.* Quoting *Reynolds v. Superintendent, Old Colony Correctional Center*, 809 N.E.2d 1051 (Mass.

11

2004), the *Rampino* Court wrote that "separate sentences must be calculated independently." *Id.*; *see Rampino v. Brady*, 392 F. Supp. 2d 77 (D. Mass. 2005).

The Government cites *Carlino v. Commissioner of Correction*, 243 N.E.2d 799 (Mass. 1969) for the proposition that when a Massachusetts court imposes two concurrent sentences, the shorter one is "absorbed" within the longer one. *Gov't's Mem.* at 12 (quoting *Carlino*, 743 N.E.2d at 800). The Court does not view *Carlino* as dispositive. In *Carlino*, the plaintiff had been sentenced to two periods of incarceration, one by the Essex County Superior Court of two and one-half to four years and another by the Worcester County Superior Court of twelve to fifteen years. *Id.* at 799. The Worcester sentence was imposed concurrently "with any sentence [the plaintiff] may now be serving." *Id.* He was then sentenced to three prison terms by the Middlesex County Superior Court "to take effect from and after the expiration of the sentence now being served in the M.C.I.—Walpole." *Id.* Mr. Carlino argued that his Middlesex sentence should begin after the expiration of his shorter Essex sentence, not his longer Worcester sentence. *Id.* at 800. The *Carlino* Court rejected this argument, observing that the Middlesex County Superior Court's use of the singular "sentence" means "the sentences now being served." *Id.* The *Carlino* Court concluded that the Worcester sentence should begin at the end of the longer, not shorter sentence since the shorter sentence for this purpose is absorbed into the longer one. *Id.*

This Court accepts the *Carlino* Court's determination that when faced with shorter and longer concurrent sentences, the longer sentence should be used to

determine the date a concurrent sentence ends and a separate consecutive one begins. But in this Court's view, this proposition does not mean that a defendant, who has fully served the shorter sentence, is still serving the expired shorter sentence as he serves out the additional period imposed in the concurrent longer sentence. *See Commonwealth v. Bruzzese*, 773 N.E.2d 921, 926 (Mass. 2002) ("When a judge orders sentences to be served concurrently, his order creates a sentencing scheme that establishes a relationship between, or among, the sentences").

Moreover, the Supreme Judicial Court of Massachusetts later refined *Carlino*. In *Henschel v. Commissioner of Correction*, 330 N.E.2d 480 (Mass. 1975), the Massachusetts Supreme Judicial Court observed that "even if two sentences are to run concurrently they must be considered separately in the computation for parole eligibility" and "[i]t cannot be said that shorter sentences are for all purposes 'absorbed' into the longer sentences." *Id.* at 483. In light of *Rampino* and *Henschel*, the Court concludes that Massachusetts law does not mean that Mr. Senior was necessarily continuing to serve his sentence for the ADW conviction on or after April 1, 2000.

Where, as here, the evidence presents two equally plausible alternatives, the resolution of the question depends upon which party bears the burden of proof. It is the Government's obligation to prove that a defendant falls within the enhanced sentencing provisions of the career offender provision of the Guidelines. *See Murdock*, 699 F.3d at 672 (Armed Career Criminal Act); *United States v. McKenzie*, 539 F.3d 15, 18-19 (1st Cir. 2008) (criminal history score); *United States v. Woodward*,

13

277 F.3d 87, 91 (1st Cir. 2002) ("The government has the burden of proving the facts central to upward adjustments in offense levels by preponderance of the evidence"). Here, the Court concludes that the Government has not proved that it is more likely than not Mr. Senior was incarcerated for the 1999 ADW conviction within the fifteen-year period under U.S.S.G. § 4A1.2(e)(1) and therefore the 1999 ADW conviction does not count for purposes of the career offender provision of U.S.S.G. § 4B1.1(a). As Mr. Senior has one, not two predicate convictions, the career offender enhancement does not apply.

## VI. CONCLUSION

The Court concludes that Mr. Senior is not a career offender, his total offense level is 18, and his criminal history category is VI,[5] for a guideline sentence range of 57 to 71 months.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of October, 2016

---

[5] This conclusion also reduces Mr. Senior's criminal history score from 16 to 13, but does not affect his criminal history category of VI.